J-S02004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THERESA A. MACKO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS R. CALORE | : | |
| | : | |
| Appellant | : | No. 1112 MDA 2022 |

Appeal from the Order Entered June 2, 2022
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  2022-04638

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED: MARCH 31, 2023**

Thomas Calore appeals the Luzerne County Court of Common Pleas' order granting the petition for protection from abuse ("PFA") filed by Calore's sister, Theresa Macko. Calore primarily argues the trial court erred by concluding his actions rose to the level of "abuse" contemplated by the PFA Act ("PFAA"), 23 Pa. C.S.A. § 6101 *et seq*. We affirm.

Calore and Macko are siblings and live across the street from each other. Calore believed Macko stole his firearm. Macko filed a PFA petition against Calore, alleging Calore had been targeting her with frequent harassing texts and phone calls and calling police to her house. Macko further asserted that Calore's abusive behavior had been escalating. She averred that the police recommended she file a PFA petition against Calore. The trial court issued a temporary PFA order. It then held a hearing on the petition on June 2, 2022.

Macko, proceeding *pro se*, testified at the hearing. She recounted that Calore has struggled for years with alcohol and mental health issues. **See** N.T., 6/2/2022, at 3. She testified that, in recent months, Calore had been sending "late night texts, phone calls, threats, [and engaging in] stalking behaviors, harassing behaviors." **Id.** at 4. According to Macko, Calore's behavior had been escalating since his communications were "accompanied by anger and threats, violence." **Id.** He told Macko "you'll be done; you'll be sorry." **Id.** at 8. She maintained Calore had informed her he had 20 security cameras aimed at Macko's house, and she had seen him point cameras towards her home. **See id.** at 9. According to Macko, Calore and his girlfriend spy on the family. **See id.** at 9-10.

Macko testified that she did not take Calore's firearm, as alleged by Calore. However, Macko testified Calore continued to bring up the firearm and her "fear [was] that when he does find his firearm, he will use it; and he will kill me." **Id.** at 8. She testified she also feared for the safety of her five children and her husband. **See id.** at 9.

Macko also called one of the parties' sisters, Pennsylvania State Trooper Marie Calore, to testify at the hearing. Trooper Calore corroborated Macko's testimony that Calore had exhibited harassing behaviors towards Macko, including sending her multiple text messages. She also testified that Calore had been hostile towards Macko for a long time but his behavior was escalating in intensity, and because of that, along with the cameras and the repeated

reference to his firearm, she feared for her sister's safety. ***See id.*** at 39, 43. Macko's husband testified about the screaming phone calls Calore had made and that Calore informed a police officer he had 20 security cameras aimed at Macko's home. ***See id.*** at 48-49, 50-51.

Calore testified at the hearing as well. According to Calore, he has never threatened Macko with bodily harm and although he does have security cameras at his house, they are not pointed at Macko's house. Calore's girlfriend testified it is Macko who has threatened Calore.

Following the hearing, the trial court entered an order granting Macko's petition and filed a final PFA order against Calore. Calore appealed, and the trial court ordered Calore to file a Pa.R.A.P. 1925(b) statement. In its Rule 1925(a) opinion, the trial court specifically indicated that it had found the testimony of Macko and her witnesses to be credible. In contrast, the court specifically found the testimony of Calore and his girlfriend to not be credible. The court concluded that it had properly entered the PFA order against Calore. Calore raises the following two issues on appeal:

> I.    Whether the trial court erred as a matter of law in finding that [Macko] established by a preponderance of the evidence that "abuse" occurred as defined under 23 Pa. C.S.[A.] § 6102(a)(2) [and (a)](5).
>
> II.   Whether the trial court's decision in granting [Macko] a final [PFA] order is against the weight of the evidence based on the testimony and lack of evidence presented by [Macko] at [the hearing].

Appellant's Brief at 5 (trial court's answers omitted).

When an appellant challenges the granting of a PFA petition, as Calore does here, we review the trial court's legal conclusions to see whether the trial court committed an error of law or abused its discretion. ***See K.B. v. Tinsley,*** 208 A.3d 123, 127 (Pa. Super. 2019). If the appellant's claim specifically alleges the evidence was not sufficient to support the PFA order, we review the evidence in the light most favorable to the petitioner to determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. ***See Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005). We defer to the credibility determinations of the trial court as to witnesses who appeared before it. ***See id.***

The purpose of the PFAA is to protect victims of domestic violence from those who perpetrate abuse, with the primary goal being the prevention of abuse. ***See K.B.***, 208 A.3d at 127. The PFAA defines "abuse," in relevant part, as the "occurrence of one or more of the following acts[:]"

> (2) Placing another in reasonable fear of imminent serious bodily injury;

> ***

> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S.A. § 6102(a)(2), (a)(5).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury. The intent of the

alleged abuser is of no moment." **K.B.**, 208 A.3d at 128 (citations omitted). Given the PFAA's goal of preventing abuse, a victim does not have to wait for physical or sexual abuse to occur for the Act to apply. **See id.**

Here, the trial court granted Macko's PFA petition pursuant to both Sections 6102 (a)(2) and (a)(5) of the PFAA. Although a trial court may grant a PFA petition under more than one subsection of Section 6102(a), **see Karch** 885 A.2d at 539, the PFAA is clear that the court need only find that the petitioner has established that one of the acts constituting "abuse" under the Act applies, **see** 23 Pa. C.S.A. § 6102(a).

We focus on the trial court's conclusion that Macko presented sufficient evidence to establish Calore's conduct "place[d Macko] in reasonable fear of imminent serious bodily injury" which constitutes "abuse" under Section 6102(a)(2). Calore essentially argues in his two issues that the trial court erred by reaching this conclusion because he never threatened Macko with bodily injury, and because Macko did not provide evidence of the threatening texts she testified Calore sent to her or any evidence that she and Calore had a history of an abusive relationship. This claim is without merit.

In rejecting Calore's claim, the trial court explained:

> The testimony of [Macko] and her witnesses [which the court specifically credited] established by a preponderance of the evidence that [Calore] engaged in a course of conduct by angry and loud yelling and texts on multiple occasions which were threatening. These outbursts coupled with [Calore's] continual reference to his alleged missing gun provided a reasonable fear of imminent serious bodily injury which meets the statutory requirement under subsection (2) of the [PFAA]. [Calore] made

- 5 -

statements as "you're done, you'll be done" and "you'll be sorry" as well as his reference in a text that he "won't stand down"; all provide a reasonable basis for [Macko] to believe she was in fear of imminent serious bodily injury. She was not required to wait until [Calore] found his gun and killed her.

\*\*\*

As the fact finder, the court was able to perceive that [Macko] justifiably felt that she was in imminent fear of serious bodily injury.

Trial Court Opinion, 8/26/2022, at 7.

We add that Macko also specifically testified that she was afraid that when Calore found his gun, he would use it to kill her. Viewing the evidence in the light most favorable to Macko, and deferring to the trial court's explicit credibility findings, we do not find any error in the court's finding that there was sufficient evidence to enter a PFA order under Section 6102(a)(2) of the PFAA, and Calore's arguments to the contrary do not persuade us otherwise.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2023

- 6 -